UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MAJOR D. LAWRENCE,

           **DECISION AND ORDER**

      Plaintiff,     1:17-CV-01251(JJM)

v.

NANCY A. BERRYHILL,
ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,[1]

      Defendant.
_____

    This is an action brought pursuant to 42 U.S.C. §405(g) to review the final determination of defendant Nancy A. Berryhill, the Acting Commissioner of Social Security, that plaintiff was not entitled to Supplemental Security Income ("SSI"). Before the court are the parties' cross-motions for judgment on the pleadings [9, 12].[2] The parties have consented to my jurisdiction [13]. Having reviewed the parties' submissions [9, 12, 15], the Acting Commissioner's motion is granted.

**BACKGROUND**

    In November 2013, plaintiff, who was 46 years old, filed an application for SSI, alleging a disability onset date of November 15, 2009, due to post traumatic stress disorder

---

[1]  Nancy A. Berryhill is currently the Acting Commissioner of Social Security. She is therefore substituted for the "Commissioner of Social Security" as the defendant in this suit. *See* Fed. R. Civ. P. 25(d); 42 U.S.C. §405(g).

[2]  Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

("PTSD"), anxiety, depression, "foot disorder", and arthritis. Administrative record [7], pp. 155-60, 195. After plaintiff's claims were initially denied (id., pp. 89-91), an administrative hearing was held on June 1, 2016 before Administrative Law Judge ("ALJ") Michael Hertzig, at which plaintiff, who was represented by an attorney, and a vocational expert, Rachel Duchon, testified. Id., pp. 35-71.

The parties' familiarity with plaintiff's treatment history, which is fully set forth in their submissions (plaintiff's Memorandum of Law [9-1], pp. 4-13; Acting Commissioner's Brief [12-1], pp. 4-14), is presumed. The opinion evidence of plaintiff's physical impairments included a January 17, 2014 internal medicine consultative exam performed by Abrar Siddiqui, M.D. [7], pp. 353-56. At that time, Dr. Siddiqui's diagnoses tracked plaintiff's chief complaints of hypertension, sleep apnea, arthritis, depression, anxiety and PTSD. Id., pp. 353, 356. On examination, plaintiff appeared to be in no acute distress. Id., p. 354. Although plaintiff complained of low back pain, his lumbar spine showed full range of motion. Id., pp. 355-56. Dr. Siddiqui diagnosed plaintiff with "mild limitations in the . . . ability to climb, push, pull or carry heavy objects". Id., p. 356.

Several months later, plaintiff began pain management treatment with Gautam Arora, M.D. for his low back. Id., p. 522. At that time, plaintiff was noted to have pain in his lumbar spine on "extremes of motion". Id., p. 524. A straight leg test was positive and a sensory exam of his lower back revealed "decreased sensation, lateral right foot". Id.[3] Dr. Arora diagnosed plaintiff with "degeneration of lumbar or lumbosacral intervertebral disc", lumbago, "lumbosacral spondylosis without myelopathy", and sciatica. Id., p. 522. Although some

---

[3] "A straight-leg-raise test is used to indicate whether the patient has an injury to the lumbar spine, such as a slipped disc or pinched nerve." Rivera v. United States, 2012 WL 3132667, *2 n. 7 (S.D.N.Y. 2012).

subsequent straight leg raise tests were negative and sensory exams were normal (*see, e.g.*, id., pp. 504, 513), plaintiff continued to treat with Dr. Arora, who administered medial branch block (id., p. 515) and transforaminal injections (id., pp. 496-97), performed radiofrequency ablation (id., p. 510),[4] and prescribed various pain medications, including Norco, Soma and MS Contin. Id., pp. 497, 500, 515. Plaintiff ceased treating with Dr. Arora in October 2014. He testified that he was discharged from pain management because a drug screen showed that he was not properly taking his pain medications. Id., pp. 50-51.

A Physical Assessment for Determination of Employability was also prepared by Donna Miller, D.O. for the Erie County Department of Social Services on December 30, 2014. Id., pp. 552-55. She measured plaintiff's ability to squat as "25% full", but noted that plaintiff declined to perform a lumbar flexion. Id., p. 553. Dr. Miller assessed plaintiff with moderate limitations (*i.e.*, the ability to perform an activity for between two to four hours) in the ability to walk, stand, and push/pull, but found no limitation in his ability to sit for four or more hours. Id. With respect to his capacity to lift, Dr. Miller found that plaintiff could occasionally lift twenty pounds and frequently lift ten pounds. Id., p. 553. She determined that plaintiff was able to work 40 hours per week with "comfort breaks" and was to "[a]void repetitive or heavy lifting, bending or carrying". Id., pp. 554-55.

With respect to plaintiff's mental impairments, a consultative psychiatric evaluation was performed on January 17, 2014 by Christine Ransom, Ph.D., who diagnosed plaintiff with several current conditions, including drug and alcohol abuse, moderate major depressive disorder, mild to moderate PTSD, and moderate unspecified anxiety disorder. Id., p.

---

[4] "Radiofrequency ablation involves 'damaging the nerves that supply a painful joint with a 'burning' technique.'" Hamm v. Colvin, 2017 WL 1322203, *5 n.22 (S.D.N.Y. 2017).

-3-

351. Dr. Ransom assessed that plaintiff had "mild difficulty following and understanding simple directions and instructions, performing simple tasks independently, maintaining attention and concentration for simple tasks, maintaining a simple regular schedule and learning simple new tasks", but also had "moderate difficulty performing complex tasks, relating adequately with others and appropriately dealing with stress". Id., p. 350. She explained that "[t]he results of the evaluation are consistent with moderate psychiatric difficulties which will moderately interfere with claimant's ability to function on a daily basis". Id., p. 351.

Approximately a year later, on January 8, 2015, Jerry Frisicaro, MS, a psychiatric nurse practitioner, who had treated plaintiff for the previous year, completed an assessment, which indicated that plaintiff suffered from PTSD and major depression since September 2013 and was "very limited" in the ability to function in a work setting at a constant pace, but was otherwise moderately limited in nearly all of the other areas of mental functioning, except the ability to make simple decisions. Id., pp. 549-50.[5]

In his June 29, 2016 decision, ALJ Hertzig determined that plaintiff's severe impairments included depressive disorder not otherwise specified and hypertension, but that plaintiff PTSD, obstructive sleep apnea and arthritis of the feet were non-severe. Id., p. 18. ALJ Hertzig also found that plaintiff did not have a medically determinable back impairment, explaining that "the record contains little objective evidence to corroborate [his] reported symptoms". Id., p. 19. He explained that while treating with Dr. Arora, "x-rays of [plaintiff's] . . . lumbar spine were unremarkable in March 2014" and that while plaintiff did have a positive straight leg raise test in April 2014 and "decreased sensation of the lateral right foot or lateral right leg" at that time, "the remainder of the claimant's physical examinations

---

[5] Curiously, Nurse Frisicaro also assessed plaintiff physical limitations. [7], p. 550.

returned no evidence of focal motor deficits and reflect no findings [of] gross neurologic deficits, weakness, or muscle atrophy". Id., p. 19. In any event, he noted that even if Dr. Arora's diagnosis of "degeneration of lumbar or lumbosacral intervertebral disc is sufficient to establish the presence of a medically determinable impairment, the generally unremarkable physical examination findings of record support a conclusion that the impairment is, at most, non-severe". Id., p. 19.

ALJ Hertzig assessed plaintiff with the residual functional capacity ("RFC") to perform light work "except he can occasionally climb and can frequently interact with coworkers supervisors, and the general public". Id., p. 22. In reaching that RFC he gave little weight to the opinion of Dr. Miller because of the lack of a treating relationship and the "absence of objective evidence establishing a back impairment and the claimant's generally unremarkable podiatry examinations" which provided "little support for the standing, walking, bending, and carrying limitations", but found that the lifting limitations were consistent with his history of hypertension. Id., p. 27. By contrast, ALJ Hertzig appeared to give (albeit not expressly) substantial weight to Dr. Siddiqui's opinion, also a consultative examiner. Id. He explained that Dr. Siddiqui's physical examination of plaintiff "was largely unremarkable and not suggestive of significant limitations on his physical functioning". Id.

With respect to plaintiff's mental impairments, ALJ Hertzig gave "little weight" to Nurse Frisicaro's opinion because he was not an acceptable medical source and only gave weight to the portion of Dr. Ransom's opinion that assessed plaintiff with a moderate limitation in relating with others. Id., pp. 26-27.

Based on the RFC and other factors, he determined that while plaintiff had no prior relevant work, there were sufficient jobs in the national economy that he was capable of

performing, and therefore was not disabled from November 12, 2013, through the date of his decision. Id., pp. 28-29. ALJ Hertzig's decision became the final decision of the Acting Commissioner on October 5, 2017 when the Appeals Council found no basis to change the decision. Id., pp. 1-5. Thereafter, this action ensued.

## DISCUSSION

**A.      Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

It is well settled that an adjudicator determining a claim for Social Security benefits employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Acting Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

Plaintiff argues that ALJ Hertzig erred in determining that he did not have a medically determinable back impairment (plaintiff's Memorandum of Law [9-1], pp. 14-15), failing to develop the record by obtaining the MRI and EMG referenced in the record (id., pp. 16-17), and failing to properly evaluate Dr. Ransom's opinion that he had a moderate difficulty dealing with stress. Id., pp. 21-23.[6] He also argues that any remand should be to a different ALJ

---

[6]      In a footnote, plaintiff further argues that ALJ Hertzig created a gap in the record "[b]y essentially rejecting both mental health expert opinions of record – those from Dr. Ransom and NP

-6-

because ALJ Hertzig manifested inappropriate hostility, rather than conducting a full and fair evaluation of the record Id., pp. 18-21.

**B.     Did ALJ Hertzig Err in Determining that Plaintiff did not have a Medically Determinable Impairment in his Low Back?**

Plaintiff argues that ALJ Hertzig erred in determining that his lumbosacral intervertebral disc disease and spondylosis are non-medically determinable impairments. Plaintiff's Memorandum of Law [9-1], p. 14. However, even if that were so, as the Acting Commissioner argues, "[t]he mere presence of an impairment, or the fact that the claimant has been diagnosed or treated for an impairment, is insufficient to render a condition 'severe.' Rather, severity is determined by the functional limitations that an impairment imposes." Hayes v. Berryhill, 2018 WL 3069116, *3 (W.D.N.Y. 2018). *See* Acting Commissioner's Brief [12-1], p. 18. In fact, ALJ Hertzig recognized that even if Dr. Arora's diagnosis of "degeneration of lumbar or lumbosacral intervertebral disc is sufficient to establish the presence of a medically determinable impairment, the generally unremarkable physical examination findings of record support a conclusion that the impairment is, at most, non-severe". Id., p. 19.

That finding is supported by substantial evidence. Plaintiff's treatment records included little evidence of any limitations. Dr. Arora's records repeatedly reflected that plaintiff denied any neurologic difficulties, including balancing, gait, or loss of strength. [7], p. 508 (June 19, 2014), 513 (June 4, 2014), 520 (May 5, 2014), 523 (April 23, 2014), 526 (April 15, 2014). Objectively, his gait and "sacroiliac joint mobility bilaterally" were almost consistently assessed

---

Frisicaro". Plaintiff's Memorandum of Law [9-1], p. 18 n. 1. However, "it is well-established that arguments made only in footnotes need not be considered by the Court." Guerra v. Commissioner of Social Security, 2018 WL 3751292, *2 n. 1 (W.D.N.Y. 2018).

as "normal", and it was noted that he had either "no focal motor deficits" or that they were within normal limits. Id., pp. 498 (October 3, 2014 – other than his gait, which was assessed as "leaning to right side"); 501 (August 20, 2014 – other than his gait, which was assessed as "able to bear weight but painful); 504 (July 21, 2014 – other than his gait, which was assessed as "able to bear weight but painful"), 508 (June 19, 2014), 513 (June 4, 2014), 521 (May 5, 2014), 524 (April 23, 2014). An x-ray of his back in March 2014 was unremarkable. Id., p. 533. While he had a positive straight leg raise test (to the left) on April 23 and May 5, 2014 with decrease sensation in the lateral right foot (id., pp. 521, 524) by June 2014, his straight leg tests were negative bilaterally and his sensory exams were normal and they remained so for the remainder of his treatment with Dr. Arora. Id., pp. 501, 504, 508, 513.

In fact, his treating physician, Tinh Trung Dao, M.D., also twice recommended during this period that plaintiff undertake aerobic activity. Id., pp. 542, 713. And even when plaintiff saw Dr. Miller in December 2014 for his consultative examination, she assessed plaintiff with normal gait, heel to toe walk, and neurologic examination. Id., p. 553. While Dr. Miller assessed his musculoskeletal exam as "abnormal", she specifically noted that plaintiff "declined to do lumbar flexion" for that exam. Id.

"Although it is true that 'the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion,' he remains 'free to choose between properly submitted medical opinions' and to rely on those opinions in reaching his disability determination." Kessler v. Colvin, 48 F. Supp. 3d 578, 597 (S.D.N.Y. 2014) (*quoting* McBrayer v. Secretary of Health and Human Services, 712 F.2d 795, 799 (2d Cir.1983)). Hence, ALJ Hertzig was not bound to accept Dr. Miller's opinion over that of Dr. Siddiqui's, which was consistent with plaintiff's

physical examinations and the objective evidence contained in the record. Therefore, I conclude that ALJ Hertzig did not did not err in his assessment of plaintiff's low back pain.

**C.      Was there a Gap in the Record that ALJ Hertzig was Obligated to Fill?**

There appears to have been an MRI and possibly an electromyogram ("EMG") of plaintiff's lumbar spine that was not included in the record. *See* [7], pp. 522 (Dr. Arora's April 21, 2014 treatment record ordering an MRI), 517 (Dr. Arora's May 21, 2014 treatment record referring to prior EMG and MRI testing). Pointing to the significance the absence of supporting objective evidence of plaintiff's low back impairment played in the ALJ Hertzig's decision, plaintiff argues that the ALJ erred in failing to obtain those records. Plaintiff's Memorandum of Law [9-1], p. 17. In response, the Acting Commissioner argues that "[p]laintiff bears the ultimate burden of proving that he was disabled throughout the period for which benefits are sought" and that since plaintiff "had plenty of opportunities to provide the MRI records to the ALJ, the ALJ cannot be penalized for [his] failure to do so". Acting Commissioner's Brief [12-1], pp. 19-20.

"Where the record evidence is sufficient for the ALJ to make a disability determination, the ALJ is not obligated to seek further medical records". Johnson v. Commissioner of Social Security, 2018 WL 1428251, *5 (W.D.N.Y. 2018). When that is not the case, the Second Circuit has broadly held that "[e]ven when a claimant is represented by counsel . . . the social security ALJ, unlike a judge in a trial, must on behalf of all claimants affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding". Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009). This, however, is not absolute in all contexts. For example, "[w]here there is a gap in the record . . . district courts in this circuit have reached conflicting conclusions as to whether the ALJ satisfies that duty by relying

on the claimant's counsel to obtain the missing evidence". Sotososa v. Colvin, 2016 WL 6517788, *4 (W.D.N.Y. 2016). *See also* Edwards v. Commissioner of Social Security, 2019 WL 1673486, *5 (W.D.N.Y. 2019) ("fulfilling her duty to develop the record, the ALJ shared all of the evidence received by the SSA with Plaintiff and advised him that she would assist him further with development of the record if he identified witnesses or documents, along with their names and addresses. Plaintiff made no such requests. At the appeals level . . . . Plaintiff did not submit additional evidence . . . . If Plaintiff believed additional evidence was in fact available, it was his duty to provide it or at the very least, take advantage of the ALJ's offers to assist him in doing so").

This is not the ordinary circumstance where the missing records are in the possession of a third party and the ALJ fails to obtain those records directly or delegates the duty to do so to plaintiff's counsel. *Compare with* Sotososa, 2016 WL 6517788 at *4 ("ALJ did not satisfy his duty to develop the record just because he told Sotososa's attorney to obtain the missing records"); Harris o/b/o N.L.K. v. Berryhill, 293 F. Supp. 3d 365, 369 (W.D.N.Y. 2018) ("[t]he fact that the essential treatment records were requested, but not received, does not obviate the ALJ's independent duty to develop the record, particularly since the ALJ could have exercised his power to subpoena them, but did not"). Here, plaintiff and his counsel were in possession of the MRI at the hearing and presumably aware of its content. *See* [7], p. 52 ("Let's go off the record for a few minutes while your lawyer looks at those records you just handed in"). However, even after being told by ALJ Hertzig to promptly submit anything further (id., p. 39 ("if you get them in before the decision goes out the door, I'll look at them. Otherwise, I won't. . . . I'm not holding the record open"), plaintiff and his counsel did not do so. Likewise,

when plaintiff received the ALJ's decision, he did not attempt to introduce the MRI before the Appeals Council. Therefore, "the ALJ did not err in failing to obtain a copy of the . . . MRI . . . . [T]here was nothing preventing Plaintiff's counsel from submitting the MRI at the hearing, if she felt that it was necessary". Ventura v. Colvin, 2014 WL 4955390, *13 (W.D.N.Y. 2014).

While the Acting Commissioner correctly notes that the absence of supporting objective evidence was not the sole reason for ALJ Hertzig's rejection of plaintiff's back impairment (Acting Commissioner's Brief [12-1], pp. 18-19), the absence of that evidence was plainly relevant to his determination. Nevertheless, under these particular circumstances, and in the absence of any indication that those records showed anything different from what was already in the record, ALJ Hertzig cannot be faulted for failing to obtain the MRI and EMG.

**D. Did ALJ Hertzig Err in Giving Little Weight to Dr. Ransom's Opinion that Plaintiff had a Moderate Difficulty in Dealing with Stress?**

Plaintiff argues that ALJ Hertzig erred by being "*completely silent* on why he rejected Dr. Ransom's opinion that [he] would have moderate limitations in dealing with stress". Plaintiff's Memorandum of Law [9-1], p. 22 (emphasis added). That is simply not so. As the Acting Commissioner responds, ALJ Hertzig was not silent on why he rejected that portion of Dr. Ransom's opinion. Acting Commissioner's Brief [12-1], pp. 20-21. He explained that he gave "partial weight" to that opinion, crediting that plaintiff has moderate difficulties in relating with others because it was supported by plaintiff's "consistent reports of anger and mood swings and by the observations of depressed mood noted throughout the mental health records" [7], p. 26. ALJ Hertzig gave "little weight" to the remainder of the limitations assessed by Dr. Ransom, including the moderate difficulty in dealing with stress, because they were "not consistent with

[his] reported daily activities, which include raising his children, cooking meals, using public transportation, shopping, and helping his children with homework. These tasks require an ability to follow simply and sometimes complex instructions, maintain attention, and maintain a schedule." He further explained that "[a]lthough Dr. Ransom identified impairment in the claimant's attention and concentration and immediate memory, no such findings are noted with consistency in the mental health treatment records of evidence. Given that Dr. Ransom examined the claimant on only one occasion, her findings are a snapshot of the claimant's functioning and do not provide a description of his mental status over time". Id., pp. 26-27. Additionally, in concluding that plaintiff's PTSD was a non-severe impairment, he explained that notwithstanding Dr. Ransom's diagnosis of plaintiff with PTSD, plaintiff's

> "mental health records reflect little workup or treatment for PTSD, and [plaintiff's] subjective complaints are related primarily to issues with depression and anger. The record reveals few, if any, reported symptoms or observed behaviors one would expect of an individual with PTSD, such as hypervigilance, avoidance of situations, and flashbacks. Notably, during the psychological consultative examination, [plaintiff] reported that PTSD had improved with counseling and Dr. Ransom indicated that the severity of the condition was 'currently mild to moderate'. . . . Based on the limited evidence of PTSD symptoms and [plaintiff's] reported improvement with treatment, the undersigned finds that PTSD has been managed and has no more than a minimal effect on [plaintiff's] ability to perform basic work activities". Id., p. 20.

In reply, plaintiff switches gears. He no longer argues that ALJ Hertzig was silent on why he rejected the stress limitation; instead, he argues for the first time that his explanation (*i.e.*, that the stress limitation is inconsistent with his activities of daily living) is "not enough to reject a medical opinion". Plaintiff's Reply [15], p. 4. However, "the Court generally does not consider arguments that are raised for the first time in a reply brief". Mcfall v. Colvin, 2016 WL 1657877, *8 (W.D.N.Y. 2016). In any event, it is evident from the portions of ALJ Hertzig's

opinion discussed above that he relied on more than plaintiff's daily activities in giving little weight to Dr. Ransom's opinion that plaintiff had moderate difficulties in dealing with stress.[7]

## CONCLUSION

For these reasons, the Acting Commissioner's motion [12] is granted and plaintiff's motion for judgment on the pleadings [9] is denied.

**SO ORDERED**.

Dated: June 19, 2019

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge

---

[7] Based upon my conclusion that remand is not warranted, it is unnecessary for me to address plaintiff's argument that this case should be referred to a different ALJ on remand. Plaintiff's Memorandum of Law [9-1], pp. 18-21.